FILED
SUPERIOR COURT
OF GUAM

2024 JAN -8 PM 3: 50

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| SAING KUI KIM,<br><br>               Plaintiff,<br><br>vs.<br><br>JAEUN KATHY YU,<br><br>            Defendant. | DOMESTIC CASE NO. **DM0472-18**<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on October 27, 2023, for hearing on Plaintiff Saing Kui Kim's ("Plaintiff") Motion to Reconsider Findings of Fact and Conclusions of Law ("Motion to Reconsider"). Present were Plaintiff with counsel, Joaquin C. Arriola, Jr., and Defendant Jaeun Kathy Yu ("Defendant") with counsel Daron Berman. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On July 30, 2023, the Court issued its Findings of Fact and Conclusions of Law after twenty days of trial, dissolving the parties' marriage based on irreconcilable differences and distributing property and debt to the parties. On August 23, 2023, Plaintiff filed the instant Motion to Reconsider. On September 25, 2023, Defendant filed her Opposition to the Motion and on October 11, 2023, Plaintiff filed his Reply. On October 27, 2023, the Court heard arguments on the Motion and subsequently placed the matter under advisement.

*Kim v. Yu*
Case No. DM0472-18
Decision and Order

## DISCUSSION

Plaintiff moves for reconsideration of the July 20, 2023 Findings of Fact and Conclusions of Law pursuant to Superior Court of Guam Local Rule CVR 7.1(i) and Guam Rules of Civil Procedure ("GRCP") 60(b)(1). *See generally,* Mot. Reconsideration, Aug. 23, 2023. Local Rule CVR 7.1(i) provides that:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of
>
> (1) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or,
> (2) the emergence of new material facts or a change of law occurring after the time of such decision, or,
> (3) a manifest showing of a failure to consider material facts presented to the court before such decision.
>
> No motion for reconsideration shall in any manner repeat oral or written argument made in support of or in opposition to the original motion.

Super. Ct. Guam R. CVR 7.1(i). GRCP Rule 60(b) provides in relevant part that:

> (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> ....
>>
>> (6) any other reason justifying relief from operation of the judgment.
>
> The motion shall be made within a reasonable time, and for reasons (1), (2), (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Guam R. Civ. P. 60(b). As the request for reconsideration is for the Findings of Fact and Conclusions of Law, and not a decision on a motion, the Court finds that GRCP Rule 60(b) applies and not Local Rule CVR7.1(i). "Rule 60(b)(1) authorizes a court to grant relief from judgments for 'mistake, inadvertence, surprise, or excusable neglect.' The 'mistakes' of judges may be remedied under this provision. The rule encompasses mistakes in the application of the law."

---

*Kim v. Yu*
Case No. DM0472-18
Decision and Order

*Cristobal v. Siegel*, 2012 Guam 16 ¶ 8 (quoting *Parks v. U.S. Life & Credit Corp.*, 677 F.2d 838, 839–40 (11th Cir.1982)).

At issue is the Court's awarding the entire MTM Building to Defendant as her separate property. The Findings of Fact and Conclusions of Law set forth the following:

38. Prior to the parties' marriage, Defendant purchased a condo in Upper Tumon for $80,000.00 that she later sold for $1.5 million. With this money, Defendant purchased a 12-unit apartment building and also started a restaurant business. Several years later, Defendant sold the apartment building and the restaurant. In January 2003, Defendant purchased Lot 1117-4-R1 and the existing building ("MTM Building") in MongMong-Toto-Maite during a foreclosure sale for $350,000.00.

39. Defendant testified that when she purchased the MTM Building and lot, the property owners indicated they were not ready to sell the adjacent properties (Lot 1116-1B-R1 and Lot 1116-1B-1) but that she could lease them until they were ready to sell. Defendant entered into a thirty (30) year lease for the two lots. Defendant paid $800.00 per month for the lease prior to purchasing the properties in July 2012 for $250,000.00.

40. At the time of Defendant's purchase in 2003, the MTM Building had significant damage from Typhoon Pongsona.

41. Defendant testified that the building used to look just like a box. Defendant renovated the building by adding staircases on each side of the building, windows, a walkway on the second floor, and a balcony railing. Defendant also testified that she cleared the jungle area in the back of the building and paved it with asphalt. Defendant also built a structure next to the building to house a generator, and brought over a $100,000.00 generator from Korea.

42. Defendant estimated she spent $400,000.00 to do these renovations and that they took over a year to complete.

* * *

24. The Court finds that the MTM Building is Defendant's separate property because she purchased and subsequently improved the building by adding windows, staircases, balcony railings, and a walkway prior to the marriage. Defendant also built a structure to house a generator and brought over a $100,000.00 generator from Korea. The Court is not convinced that Plaintiff significantly contributed improvements during the marriage effecting the appreciated value of the property, which currently stands at $1,342,000.00. Absent

proof of the enhancement of a spouse's separate property, there should be no reimbursement to the community. *Reinhart v. Reinhart*, 2000 Guam 14 ¶¶ 19-20 (citing *Bliss v. Bliss*, 898 P.2d 1081 (Idaho 1995)).

25. As to the MTM Property (Lot 1117-R4-R1, Lot 1116-1B-R1, and Lot 1116-1B-1), currently valued at $384,000.00, the Court finds that 1/3 of the land area (Lot 1117-R4-R1) is Defendant's separate property because it was purchased prior to the parties' marriage ($384,000.00 ÷ 3 = $128,000.00).

26. As to the remaining 2/3 of the MTM property, the Court finds that because Lot 1116-1B-R1 and Lot 1116-1B-1 were purchased during the marriage, this portion of the MTM Property is community property, the value of which shall be distributed equally between the parties ($128,000.00 each).

(FFCL at 7; 32, Jul. 20, 2023). Plaintiff argues that he "is entitled to ½ share of approximately 75% of the MTM Building comprising Lots 1, 2, and 3." (Mot. Reconsideration at 2). Plaintiff sets forth that "the Court committed clear error when it found that Lot 2 and Lot 1116-1-B1 ("Lot 3") were purchased during the marriage, yet the *entire* MTM Building, was not considered community property. The Court's finding that the MTM Building was the Defendant's separate property was a mistake because the Court also found that the Coast 360 loan – the loan used to repair and maintain the MTM Building – *was* a community debt." (Reply at 3) (emphasis in original). Defendant opposes, arguing that the "Court properly analyzed the MTM Property, considering all of the evidence re-submitted by the Plaintiff in his present motion, and as such its findings should be upheld." (Opp'n at 3).

The Court acknowledges that the Coast 360 loan was deemed to be a community debt. *See* FFCL at 30. However, the Court made the following findings regarding the Coast 360 loan:

61. In July 2012, the parties incurred a $600,000.00 mortgage loan from Coast 360. The entire MTM property was mortgaged. The monthly payment on the loan was $4,212.50. The term was 120 months or 10 years. The promissory note was signed by Defendant, and consented to by Plaintiff.

62. The Coast 360 loan was used to pay off the $250,000.00 Bank of Guam loan received to get the Agat Property.

63. Defendant testified that the remaining amount of the Coast 360 loan was used to purchase machines for SK Laundromat.

64. Plaintiff testified that money generated from both businesses was used to pay the Coast 360 loan.

65. Since separation, Defendant has continued to make monthly payments. At the time of trial, a balance of about $450,000.00 remained on the Coast 360 mortgage.

*Id.* at 9-10. The Court therefore did not make a finding that the Coast 360 loan was used to repair and maintain the MTM Building, rather, that the loan was used for SK Laundromat, which the Court determined was community property. The Court does not find that the purchase of Lots 2 and 3 and their subsequent distribution as community property changed the separate property designation of the MTM Building. Accordingly, the Court finds that there is no basis for reconsideration and denies Plaintiff's Motion to Reconsider.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiff's Motion to Reconsider Findings of Fact and Conclusions of Law.

**IT IS SO ORDERED** this _8th_ day of January, 2024.

HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam